UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| VANESTA M.,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:21-cv-00149-SEB-DML |
| | ) |
| KILOLO KIJAKAZI Acting Commissioner of the | ) |
| Social Security Administration, | ) |
| | ) |
| Defendant. | ) |

**ORDER OVERRULING PLAINTIFF'S OBJECTIONS TO
THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff Vanessa M. petitioned the court for judicial review of the Commissioner of the Social Security Administration's final decision finding her not disabled based on the information set forth in her application filed in August of 2019. The case was referred to Magistrate Judge Lynch for her consideration. On August 15, 2022, Magistrate Judge Lynch issued a Report and Recommendation that the Commissioner's decision be upheld because it was supported by substantial evidence and was otherwise in accord with the law. Vanessa timely objected to the Magistrate Judge's Report and Recommendation, which we now consider.

**I.    STANDARDS OF REVIEW**

In our review of the decision of the Administrative Law Judge ("ALJ"), we will not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [our]

---

[1] To protect the privacy interests of claimants for Social Security benefits, the Southern District of Indiana has chosen to use only the first name and last initial of non-governmental parties in its Social Security review opinions. The Plaintiff will therefore be referred to by her first name.

1

own judgment for that of the Commissioner." *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Under this deferential standard of review, we must affirm if no error of law occurred and the ALJ's factual findings are supported by substantial evidence. "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001). The standard demands more than a scintilla of evidentiary support, but it does not demand a preponderance of the evidence. *Wood v. Thompson*, 246 F.3d 1026, 1029 (7th Cir. 2001). When accepting or rejecting specific evidence of a disability, the ALJ is required to articulate a minimal, but legitimate, justification. *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004). The ALJ need not address every piece of evidence in his decision, but he cannot ignore a line of evidence that undermines the conclusions he made, and he must trace the path of their reasoning and connect the evidence to his findings and conclusions. *Arnett v. Astrue*, 676 F.3d 586, 592 (7th Cir. 2012); *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000). We confine the scope of our review to the rationale offered by the ALJ. *See SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943); *Tumminaro v. Astrue,* 671 F.3d 629, 632 (7th Cir. 2011).

In our review of a party's specific objections to elements of a Magistrate Judge's Report and Recommendation, the district court reviews those elements *de novo,* determining for itself whether the Commissioner's decision as to those issues is supported by substantial evidence or was the result of an error of law. Fed. R. Civ. P. 72(b); 28 U.S.C. § 636(b)(1)(C). *De novo* review requires a re-examination of the case with a fresh set of eyes and "an independent judgment of the issues." *Moody v. Amoco Oil Co.*, 734

2

F.2d 1200, 1210 (7th Cir. 1984). After review, the court is empowered to adopt, reject, or modify the recommendations and/or findings by the Magistrate Judge. Fed. R. Civ. P. 72(b). The objections before us have been properly and timely interposed.

## II.     DISCUSSION AND DECISION[2]

Vanessa filed for disability benefits in August of 2019, alleging that she had been disabled since May 5, 2019. Vanessa was forty-six at the allege onset of disability, and had compiled a varied work history, with her most recent jobs before the onset of her alleged disability being food service assistance and assisting with laundry, food preparation, and other assistance tasks at a seniors' home on behalf of the residents. After her alleged disability onset, Vanessa held a job for three months, working in a grocery store's deli department, but "she left that job because of feelings of stress that led her to become angry with coworkers and because the physical aspects of the job, including constant standing, caused pain." Docket No. 16, at 6. At step two of the sequential evaluation process for proving disability, the ALJ determined that Vanessa's severe impairments included: chronic trochanteric bursitis of the right hip, high grade rotator cuff tendonitis, COPD and/or asthma, obesity, borderline intellectual functioning, major depressive disorder, generalized anxiety, panic disorder, and post-traumatic stress disorder.

---

[2] The relevant evidence of record is amply set forth in the parties' briefs as well as the ALJ's decision and need not be repeated here. Specific facts relevant to the Court's disposition of this case are discussed below.

For Vanessa's residual functional capacity ("RFC"), the ALJ determined that Vanessa is capable of sedentary work with some additional restrictions.[3] None of Vanessa's past relevant work was consistent with these restrictions; all of it required physical capabilities in excess of the limited capabilities of sedentary work. Thus, the ALJ decided at step four that Vanessa could not perform any past relevant work. But based on the testimony of a vocational expert, the ALJ determined that jobs consistent with Vanessa's RFC and vocational factors are available in sufficient numbers in the national economy: Touch-up Screener (22,700 jobs), Table Worker (20,000 jobs), and Document Preparer (27,600 jobs). Thus, the ALJ concluded that Vanessa was not disabled at any time between alleged onset and the date of his decision.

In this appeal, Vanessa argues several errors regarding the ALJ's residual functional capacity determination, the ALJ's crediting of testimony from the vocational expert about jobs consistent with the RFC, and whether the available jobs exist in significant numbers in the national economy. Specifically, Vanessa asserts that the RFC determination by the ALJ is erroneous because it is based on: (1) flawed evaluations of opinions provided by medical providers or reviewing physicians about her functioning, (2) a flawed evaluation of Vanessa's statements about the severity of her impairments and their effects on her

---

[3] Specifically, the ALJ decided that Vanessa: "(1) is capable of lifting up to 10 pounds, sitting 6 hours in an 8-hour workday, and standing/walking for up to 2 hours, (2) is limited with respect to certain postural activities, workplace hazards, and to work environments that have temperature and dampness extremes or pulmonary irritants, (3) can frequently reach but only occasionally overhead with the right upper extremity, and (4) cannot engage in interactions with the public and can have only occasional, brief (up to 2-3 minutes in duration), and superficial interaction with co-workers or supervisors that excludes tandem tasks and team work." Docket No. 16, at 7.

functioning, and (3) an overall failure to fairly evaluate the evidence and include all limitations supported by the record. With respect to the jobs the ALJ found Vanessa is capable of performing consistent with the RFC, Vanessa contends that the jobs are not actually consistent with the RFC and the Commissioner did not meet her burden at step five to show that they exist in significant numbers.

In Magistrate Judge Lynch's Report and Recommendation, she addressed Vanessa's objections, first rejecting the argument that the ALJ cherry-picked her medical records to cite only information supporting the conclusion that Vanessa was not disabled. Instead, Magistrate Judge Lynch determined that the ALJ acknowledged "the records established her care providers' evaluation of Vanessa's complaints and their diagnoses based on the complaints and examinations," and gave "extremely detailed explanations about why the medical treatment records—while consistent with the existence of severe impairments—were not supportive of the level of severity and impact on functioning that Vanessa described or that two of her providers described in medical source opinions." *Id.* at 8. For example, "Vanessa's alleged onset date (May 5, 2019) roughly corresponds to a date that she went to an emergency room because of pain in her right hip and shoulders, where she reported that the shoulder pain had existed for weeks and the hip pain for months." *Id.* at 10. The ER record describes Vanessa's symptoms as mild, and the radiology exams produced "unremarkable" results. *Id.* at 9.

Vanessa saw the same Family Nurse Practitioner Galesanu ("FNP") three times after her ER visit, the final time in September of 2019 when Vanessa said she "need[ed] disability papers filled out." *Id.* at 10. After the FNP filled out the disability paperwork,

5

Vanessa never returned for any treatment or evaluations by the FNP after obtaining the disability paperwork from her. The ALJ concluded Galesanu's "check mark" opinions about Vanessa's physical limitations were not persuasive, emphasizing that Galesanu had not cited a single piece of objective evidence, such as test results or clinical findings, to support the opinions, and Galesanu's own treatment records were not consistent with the limitations. *Id.* at 15−16. As Magistrate Judge Lynch concluded, "Vanessa does not point to anything in the record from which the ALJ could have found support for the extreme physical limits provided by Galesanu." *Id.* at 16. "The court rejects Vanessa's argument that the ALJ erred in his evaluation of the persuasiveness of FNP Galesanu's medical opinion." *Id.* at 17. The explanations the ALJ provided are "robust and ones that a reasonable person might accept as adequate to support his conclusion." *Id.*

Vanessa also challenges the ALJ's evaluation of Counselor Craven's psychiatric opinions, with whom Vanessa attended only three psychotherapy sessions after her initial evaluation. Vanessa did not attend additional therapy sessions, as Counselor Craven had initially recommended, to have a "complete evaluation" or to obtain a doctor's evaluation of her medication. She did not see Counselor Craven again after obtaining his written documentation about her mental health functioning to provide to the Agency. The ALJ found that Counselor Craven's opinions about Vanessa's functioning within a work setting were "only somewhat persuasive." *Id.* at 19. "The ALJ agreed that the overall record established that Vanessa is limited particularly with respect to interactions with others but determined that Counselor Craven's opinions lacked some supportability, were internally inconsistent in some respects, and lacked consistency with the overall record of

6

Vanessa's mental health treatment." *Id.* The ALJ noted that "although Craven stated that Vanessa was 'seriously limited' in engaging in a range of social work-related activities, he also stated that she suffered from a moderate level of social impairment overall." *Id.* at 20. The ALJ also stressed that Craven's therapy notes regularly observed that Vanessa's functioning was only "mildly impaired." *Id.* "The ALJ's reasoning that the requisite episodes with the requisite duration could not be squared with the overall record reflecting stable mental health conditions with some exacerbation in the fall of 2019 based on Vanessa's reports of significantly increased symptomology is logical." *Id.* at 21. "In summary, the court finds that the ALJ's evaluation of the persuasiveness of Counselor Craven's opinions is supported by substantial evidence." *Id.*

Vanessa challenges the ALJ's evaluation of the opinions by the two consultative examining medical providers: Dr. Jacobs, who conducted a physical examination, and psychologist Kurzhals, who made a psychological assessment. "Vanessa complains that, as a matter of law, the ALJ was not permitted to decide the accommodations within an RFC appropriate to capture Dr. Kurzhals's opinions about the severity of Vanessa's limitations, but that is exactly what an ALJ is tasked to do." *Id.* at 23. The ALJ considered Dr. Kurzhals's opinion in light of the entire administrative record and made decisions about appropriate accommodations to capture the opinion. As for Dr. Jacobs who performed a physical consultative examination and concluded that Vanessa is capable of light work, the ALJ decided that while Dr. Jacobs's one-time examination provided some support for his opinion, the overall record was not consistent with his opinion that Vanessa is capable of light work. For that reason, he stated that Dr. Jacobs's

7

opinion is "somewhat persuasive." *Id.* at 24. As such, the RFC limits Vanessa to the lower level of exertion of sedentary work. "Why Vanessa would complain about the ALJ's evaluation in this context lies in an overarching argument she makes—that the ALJ was not permitted to give only 'somewhat' persuasive weight to all of the medical opinions about Vanessa's functioning but was required to have some part of an expert medical opinion that matched each and every functionality within the RFC." *Id.* at 24. "She cites no authority for that proposition, and there is none." *Id.*

The court also finds significant support "within the ALJ's decision to explain the bases for his decision about an appropriate RFC and why he rejected Vanessa's statements about her physical and mental inabilities to work or needed more accommodations than the ALJ accorded her." *Id.* at 26−27. The ALJ addressed numerous reasons for his refusal to credit Vanessa's statements about the "intensity, persistence, and limiting effects" of symptoms from her impairments. *Id.* at 27. Those reasons are supported by the record. And because the ALJ's evaluation of Vanessa's subjective statements is not "patently wrong," his evaluation is entitled to special deference. *Id.* at 26 (quoting *Engstrand v. Colvin*, 788 F.3d 655, 660 (7th Cir. 2015). The ALJ explained that Vanessa gave "markedly different histories about her impairments to different medical providers," and "consistently failed to follow through with treatment recommended by her providers and, indeed, quit seeing some providers as soon as they completed paperwork to support her disability applications." *Id.* at 28−29. "A fair reading of the ALJ's decision reveals a thorough and detailed discussion about why he discounted Vanessa's own statements about the effects of her impairments," and his analysis is not patently wrong. *Id.* at 30.

8

"Overall, Vanessa's arguments about alleged errors in the ALJ's analysis and decision-making boil down to this: she doesn't like how the ALJ weighed the evidence." *Id.* "But in this court's experience from reading hundreds of ALJ disability decisions, the decision here is detailed and thorough." *Id.* The ALJ addressed "every material doctor's visit and evaluation, and he explained in detail and by each category of Vanessa's impairments (physical and mental) the nature of her impairments and the treatment she received, along with "every medical opinion and why and how he found the opinion persuasive or not, and he addressed why Vanessa's statements about the effects on her functioning were not persuasive." *Id.* "This court does not reweigh evidence, and it rejects Vanessa's overarching contentions that the decision reflects only a cherry-picking of information helpful to the ALJ's conclusions and lacks logical paths between evidence and conclusions." *Id.* Lastly, Magistrate Judge Lynch concluded that substantial evidence supported the ALJ's findings regarding available jobs. *Id.* at 31. Magistrate Judge Lynch also ruled, correctly in our view, that the ALJ was entitled to rely on the vocational expert's opinion, and the vocational expert's opinions refute Vanessa's arguments on this issue.

### III. CONCLUSION

Having reviewed *de novo* the Magistrate Judge's analysis and conclusions, we hold, for the same reasons set forth in her report, with which we entirely concur and hereby adopt both as to the cited authorities and related analysis, that none of the assignments of error raised by Vanessa meets the standard required to justify remand. Accordingly,

Vanessa's objections to the Report and Recommendation of the Magistrate Judge lack merit and her objections are **OVERRULED**. The recommendations set forth in the Magistrate Judge's Report and Recommendation [Docket No. 16] are hereby **ADOPTED** in their entirety. Final judgment shall enter in favor of Defendant and against Plaintiff.

IT IS SO ORDERED.

Date: 9/21/2022

*Sarah Evans Barker*
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Lindsay Beyer Payne
SOCIAL SECURITY ADMINISTRATION
lindsay.payne@ssa.gov

Julian Clifford Wierenga
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
julian.wierenga@usdoj.gov

Adriana Maria de la Torre
THE DE LA TORRE LAW OFFICE LLC
adriana@dltlawoffice.com